## HORACE GRAY *versus* JAMES BARTLETT.

The erection of a wharf below low-water mark, without authority from the legislature, gives the builder no possession and no color of title beyond the limits of the land under water actually covered by the wharf, and does not draw after it any exclusive right to the use of the open space by the side of it, for the purposes of a dock, by way of easement as appurtenant to the wharf.

Such open space below low-water mark being a public domain, the use of it by the builder of the wharf for the purposes of a dock, with the acquiescence of any individual, does not establish an easement as against such individual.

If the owner of a parcel of flats covers the whole of the same, to low-water mark, with a wharf, he does not thereby assert the claim of a right to lay vessels upon the flats of an adjoining proprietor, and therefore the silence of such proprietor during the erection of the wharf, is no evidence of his tacit acquiescence in such a claim.

The principle, that where one stands by and sees another laying out money upon property to which he himself has some claim or title, and does not give notice of it, he cannot afterward in equity and good conscience set up such claim or title, does not apply to an act of encroachment on land, the title to which is equally well known or equally open to the notice of both parties, but it applies only against one who claims under some trust, lien or other right not equally open and apparent to the parties, and in favor of one who would be misled or deceived by such want of notice.

BILL in equity for an injunction and for further relief. The bill sets forth, that the plaintiff is owner of Gray's wharf in Boston, to which are appurtenant several easements, and among others, that of a dock on the westerly side at the lower part ; that the defendant is owner of the wharf next westerly, which was so constructed, prior to the grievances complained of, as not to interfere with the plaintiff's wharf or dock ; but that the defendant had extended his wharf below low-water mark, so as to injure a part of the plaintiff's dock, and intends to extend the same further, so as entirely to exclude vessels from entering the plaintiff's dock, whereby it will be rendered wholly useless ; that about 1806, more than twenty-seven years before the commencement of the suit, John May, then the owner of the plaintiff's wharf, lawfully extended the same ten feet or more below low-water mark, and became seised thereof ; that May conveyed to Rice, Rice to Shaw, and in 1816 Shaw conveyed to William Gray, the plaintiff's father ; that in 1816 it was lawfully extended by William Gray to its present length, openly, publicly and expensively ; that Sam-

uel Parkman, under whom the defendant holds, was the sole owner of the defendant's wharf at the times of both of these extensions, and was fully apprized of the same when the works were commenced and during their whole progress, and the whole was extended without objection and with his acquiescence ; that the wharf thus extended was occupied by William Gray, with the docks, &c., until his decease in 1825, whereby he became seised of the premises ; that he devised the same to his sons, and the other sons afterwards conveyed their interest to the plaintiff, who continued to occupy the premises without complaint, until the act of the defendant complained of ; and that the extension of the plaintiff's wharf has never been an injury to navigation, but the contrary.

The defendant's answer admits the plaintiff's seisin to low-water mark, but denies that it extends further ; denies his right to a dock on the westerly side of his wharf ; admits that the defendant is owner of the adjoining estate ; admits that he has extended his wharf, and that he designs to extend it further, but says he will abstain until the suit shall be determined ; denies that he has encroached upon the plaintiff's dock ; denies that May extended the plaintiff's wharf below low-water mark, or became seised of any of the land below low-water mark, or that the same was conveyed to Rice, Shaw or William Gray ; admits that William Gray extended his wharf below low-water mark, but alleges that it was done unlawfully ; denies that Parkman was apprized of such extension and with such knowledge permitted the same without objection ; and denies that such extension is no injury to navigation, and avers the contrary.

A general replication was filed, and the following issues were framed under the direction of *Wilde* J.

1. Whether the plaintiff, or those under whom he claims, had a right to extend his wharf, as he alleges they did ; and at what time was the same done.

2. Whether the defendant has a right to extend his wharf in the manner and to the extent he claims a right to do in his answer.

3. Whether the plaintiff, or those under whom he claims, have by the extension of his wharf wrongfully damaged the defendant in the use of his wharf.

4. Whether Parkman, or his agent, had actual not.ce or knowledge of the extension of the plaintiff's wharf, as alleged in the bill.

5. Whether Parkman, or his agent, ever objected to the extension of the plaintiff's wharf as the same was extended.

Much evidence was introduced by the parties respectively in support of the allegations in the bill and answer.

It appeared that in 1826 Bartlett extended his wharf to low-water mark ; that in 1828 he extended it below low-water mark, *to within fifty-four feet of the end of Gray's wharf* ; and that next, he was extending it further, when he was forbidden by the plaintiff. It also appeared that the corner of the plaintiff's wharf projected over the defendant's eastern boundary line protracted, and so intervened between his wharf and the channel of the river.

The jury were instructed, with respect to the first issue, that they should find whether the plaintiff, or his ancestor, had a right to extend his wharf when it was extended, and also whether he has since acquired a right to enjoy his extension. Upon the first of these questions it was contended by the plaintiff, that he had a right to go below low-water mark, because it did not appear that such an extension was a public nuisance but the jury were instructed, that if they should find it was no. a public nuisance, still if they should find it was a private nuisance injurious to the defendant and those under whom he claims, the extension was unlawful in respect to him, and this part of the issue should be found for the defendant ; that if they should so find on the first question, then they would further find, whether the plaintiff now has a right to enjoy the extension, and as to this, in the opinion of the judge, they would have no doubt, upon the statute of 1837, *c.* 229, circumscribing the harbor of Boston. They were further instructed, that the second and third issues were so connected, that they might be considered together ; that if the jury found the extension of the plaintiff's wharf a wrongful injury, they would find the third issue for the defendant ; that as to the defendant's right to extend his wharf, the *matter in dispute was fifty-four feet towards the end* ; that if they were of opinion that the extension by the defendant would be no injury to the

public, and no injury to the plaintiff, they might sustain the ground of the defendant ; they might not perhaps find that the defendant had an absolute right under the act of 1837, but if the evidence would justify them, they might find that the defendant has a right to extend his wharf, so far as regards the plaintiff; that if they should find that the plaintiff's extension was no nuisance, then the main question to be considered was, whether the plaintiff had acquired a right to the fifty-four feet, over which the defendant had no right to extend his wharf; that prior occupancy of land is sufficient to give a right as against a mere stranger ; that they were to consider whether this case came within that principle ; that the possession must be exclusive, and not joint or alternate, and the decision of the question would depend upon the question, whether the defendant had a right to use the water before the extension ; that if he had, then the question would turn upon acquiescence ; that if a man erects a wharf and uses a dock twenty years, adverse possession would give him a right to the easement, on the presumption of a grant ; that in the case of owners upon a cove, one must not shut out another's access ; that one having no right, cannot build out in such a way below low-water mark, as to materially injure another ; for instance, if the plaintiff had built an L in front of the defendant's wharf, it could not stand ; that if the plaintiff's extension was injurious to the defendant's property, unless there had been twenty years' acquiescence on the part of Parkman and those claiming under him, they might find that the defendant has a right to extend his wharf.

The jury found upon the *first* issue, that the plaintiff, or those under whom he claims, had no right to extend his wharf at the time he or they did, but that he now has a right to the wharf by the statute of 1837, so far as it does not infringe upon the direct line of the defendant's premises ; upon the *third*, that the extension of the plaintiff's wharf did injure the defendant ; upon the *second*, that, so far as concerns the plaintiff, the defendant has a right to extend the wharf in the manner he claims to do ; upon the *fourth*, that Parkman had notice or knowledge of the extension of the plaintiff's wharf ; and upon the *fifth*, that Parkman d'd not object to the extension.

*J. Mason* and *Gray* contended, that so far as regards the public, the plaintiff had a right to the use and enjoyment of his wharf as it now stands, and of the dock as appurtenant to it, 1. by the principles of the common law, inasmuch as the wharf was not an impediment to navigation, Angell on Tide Waters, 127, 132, 156 ; 2 Dane's Abr. 696, 697 ; *Commonwealth* v. *Wright, No.* 6 Amer. Jurist, 185 ; and 2. by legislative acts, namely, the Revised Stat. *c.* 119, § 12, and *St.* 1837, *c.* 229 ; the Revised Statutes having established a limitation of twenty years for suits in behalf of the Commonwealth for the recovery of lands ; and the statute of 1837 having enacted, that a line which passes through the western corner of Gray's wharf, shall be one of the lines in Boston harbor beyond which no wharf shall ever hereafter be extended into and over the tide water of the Commonwealth, and that no person shall extend any wharf which is now erected on the inner side of said line, further towards the said line, than such wharf now stands or than the same might have been lawfully extended before the passing of the act. 6 Dane's Abr. 86 ; *Jackson* v. *Harden,* 4 Johns. R. 202 ; *Smith* v. *Lorillard,* 10 Johns. R. 338 ; *Cutts* v. *Spring,* 15 Mass. R. 135.

And as regards the defendant, they argued that the plaintiff's wharf, which he has thus a right to maintain as it now stands, was of no value without the docks ; that the wharf had been extended openly and expensively with the knowledge and acquiescence of the defendant's grantors, and the dock in question had been used by the plaintiff and his ancestor, ever since the extension of the wharf, and was appurtenant to it ; that this extension was inconsistent with the right of the defendant and his grantors to the dock ; and that by their acquiescence, whether for a longer or a shorter period than twenty years, the plaintiff had acquired an easement in the dock. *Kent* v. *Waite,* 10 Pick. 138 ; *Doane* v. *Broadstreet Association,* 6 Mass. R. 332 ; 1 Story on Equity, 376, 378 ; *Hicks* v. *Cooke,* 4 Dow, 16 ; *East India Co.* v. *Vincent,* 2 Atk. 83 ; *Taylor* v. *Hampton,* 4 M'Cord, 96 ; *Tarrant* v *Terry,* 1 Bay, 239 ; *Whalley* v. *Thompson,* 1 Bos. & Pul 371.

*Aylwin* and *C. G. Loring*, for the defendant, said that the extension of the plaintiff's wharf below low-water mark was unlawful ; Colony Ordinance of 1641, Ancient Chart. 148 ; *Commonwealth* v. *Charlestown*, 1 Pick. 184 ; *Commonwealth* v. *Chapin*, 5 Pick. 201 ; *Attorney General* v. *Johnson*, 2 Wilson's Ch. Rep. 101; *Stoughton* v. *Baker*, 4 Mass. R. 528 ; that the defendant however was willing to let it stand, excepting the corner which projects over his boundary line ; that the statute of 1837 was not a confirmation of the plaintiff's claim to his wharf as it now stands ; that it describes a boundary line of the harbor for the guidance of the Commonwealth, but was not intended to affect the rights of individuals, either as against the public or as between themselves, or at most, it should be viewed as only remitting the right of the Commonwealth to prosecute for a public nuisance caused by an erection between such line and the shore ; *Charles River Bridge* v. *Warren Bridge*, 7 Pick. 444 ; that the doctrine of estoppel from acquiescence will protect a party against a secret claim, but does not apply where he makes a direct known invasion of another's property ; *Attorney General* v. *Baliol College*, 9 Mod. 411 ; *Plumb* v. *Fluitt*, 2 Anstr. 432 ; that supposing an easement in the fifty-four feet of dock in front of the defendant's wharf, might be acquired by the plaintiff, his use of it had not been adverse and exclusive, nor so long continued as to give the easement claimed ; *Sargent* v. *Ballard*, 9 Pick. 251 ; 1 Story on Equity, § 391, 394 ; *Kenney* v. *Browne*, 3 Ridgeway's Parl. Cas. 518, 519 ; *Elliotson* v. *Freetham*, 2 Scott, 174 ; and that the plaintiff was not entitled to an injunction to prevent the defendant from extending his wharf to the line of the harbor as defined in the statute of 1837.

SHAW C. J. delivered the opinion of the Court. It appears to the Court very clear, that the extension by Mr. Gray, the plaintiff's ancestor, in 1816, of his wharf into the channel below the line of low-water mark, whether it was a public nuisance or not, or whether in any form the public could have interposed to prevent or remove it, gave the builder no possession, and no color of title, beyond the limits of the land under water, actually covered by some erection which would in fact exclude the use of the public waters to others. Of course,

*April 6th.*

it did not draw after it any exclusive right to the use of the open space by the side of it, for the purposes of wharfage, by way of easement as appurtenant to his wharf. Beyond the limits of his actual occupation, by building, the plaintiff's ancestor had a right, in common only with all others, to use the space on both sides of his wharf, for the purposes of passing over it with boats and vessels, and for mooring vessels upon, as all persons have a right to use open navigable waters.

The principle of prior occupancy by Mr. Gray, the ancestor of the plaintiff, and the acquiescence of the ancestors of the defendant, does not apply to any part of the premises in controversy, below low-water mark, because, as to that the possession was not adverse, and Mr. Parkman, the defendant's ancestor, had no power to oppose or resist it. It was a public domain, over which Mr. Parkman had no control; and his right to use it, was a right in common with all the rest of the community, and one which it was not his peculiar duty or province to vindicate.

A point mainly relied on is this, that when the elder Mr. Gray extended his wharf within and beyond low-water mark, which was a great public improvement, he covered the whole width of his flats, or nearly the whole, with his wharf; that it was essential to the enjoyment of his wharf, that he should make use of the adjoining flats for dockage; and that the adjoining proprietor must have known and understood this, and by his silence tacitly acquiesced in this claim, and gave him permission so to occupy the adjoining flats. But the Court are of opinion that this is making much too broad a claim, upon the foundation of tacit acquiescence. When Mr. Gray built out his wharf from high to low water mark, he had a right to use and occupy his own flats to the full breadth, in any manner which he thought fit. He might use the flats solely for wharf or solely for docks, or partly for one and partly for the other. But he could not use the same flats for wharf and for docks at the same time. If therefore it was his intention to use the sides of his wharf, or either of them, for dockage to lay vessels upon, it was in his power to leave open a sufficient part of the flats for that purpose, and for access to them. His not doing so, was rather an indication that it was

not his intention to use the sides of the wharf to lay vessels at, but only the end. At all events, it did not amount to the claim of a right, to use the land and flats of the coterminous proprietor to lay vessels upon, without any title by grant or prescription ; and therefore the silence of the coterminous proprietor is no evidence of his tacit acquiescence in such a claim. At most it can amount to no more than evidence of the consent of such coterminous proprietor, that the party may so cover his flats, with his wharf, if it suits his interest or choice to occupy it as wharf rather than as a dock.

The principle was much relied upon, that where one stands by and sees another laying out money and making large investments upon property, to which he himself has some claim or title, and he does not give notice of it, he cannot afterwards, in equity and good conscience, set up such claim or title. This we think is a very just and well settled principle, when well understood and properly applied. But it does not apply to this case, because the acts of Mr. Gray did not tacitly or expressly amount to any claim upon the property or rights of the coterminous proprietors, whose estate the defendant now holds ; but were either such as he had a right to do, within the exercise of his own rights, upon his own flats, or were done upon the public domain, against which those proprietors could make no legal resistance. Besides, the principle insisted on requires some qualification, and can be only held to apply against one who claims under some trust, lien or other right not equally open and apparent to the parties, and in favor of one who would be deceived or misled by such want of notice. But where the act of one is an encroachment on the soil or rights of another, an acknowledged tort, equally well known, or equally open to the notice of both parties, it gives no right, until it has continued for such a length of time without interruption, as to found the presumption of a grant, or give effect to the limitation of the right of action for the disturbance, as determined by common law or by statute.

In this suit, it must be remembered, that the plaintiff seeks to enjoin and inhibit the defendant from building out and extending his own wharf, within the limits of his own original lines, and upon an extension of those lines to low-water mark,

Gray
*v.*
Bartlett.

a claim which in the opinion of the Court cannot be main-tained. But this opinion is not intended to affect in any respect, the rights of the parties to a small triangular piece, covered by the wharf of the plaintiff at the northwest corner thereof. That portion of the wharf, as appears by the plans used at the hearing, lies west of the line of the plaintiff's flats, as extended from the shore to low-water mark, and lies upon that part of the land below low-water mark which lies in front of the defendant's land. It is land originally below low-water mark, a part of the public domain, and owned by neither of these parties. No claim is made for it, in this suit, by the defendant, and the only point open, and the only one to which this opinion applies, is, that the plaintiff has established no right, for the purposes of dockage, to that portion of the flats lying west of the original line of his own flats, and over the land and flats which would be covered by the defendant's wharf, if extended in like manner.

*Plaintiff's bill dismissed, with costs.*